NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STEVEN T. CORBIN,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2016-1193

---

Petition for review of the Merit Systems Protection Board in No. DC-4324-15-1023-I-1.

---

Decided: June 9, 2016

---

STEVEN T. CORBIN, Bethesda, MD, pro se.

IDA NASSAR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR., MELANIE RUSSELL.

---

Before MOORE, SCHALL, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

DECISION

Steven T. Corbin petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied his request for corrective action following his resignation from the Department of Justice ("DOJ" or "agency"). *Corbin v. Dep't of Justice*, No. DC-4324-15-1023-I-1 (M.S.P.B. Oct 27, 2015) ("*Final Decision*"). We *affirm*.

DISCUSSION

I.

On July 27, 2015, Mr. Corbin filed an appeal with the Board alleging that DOJ had discriminated against him on account of his prior military service and had forced him to resign from his position as an accountant (GS-13) in the Justice Management Division ("JMD"), in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* Specifically, Mr. Corbin asserted that he had been accused of theft and that, because of extreme duress put upon him, he was forced to resign on January 6, 2015.[1]

On October 14, 2015, at Mr. Corbin's request, the administrative judge ("AJ") to whom the appeal was assigned held a telephonic hearing. At the hearing, Mr. Corbin testified that his resignation came after Christopher C. Alvarez, Deputy Director of the Finance Staff, JMD, his third-level supervisor, accused him of stealing "military money." *Final Decision* at 3–4.

---

[1] Although Mr. Corbin contends that he separated from DOJ on January 6, 2015, the record suggests he remained at DOJ until January 20, 2015, the date he informed his supervisor that he was leaving his position "effective immediately." *See Final Decision* at 2–3, 5.

Mr. Corbin stated that he was questioned "all night" about the matter and that the agency installed a camera above his desk to watch his activities. *Id.* at 3. Mr. Corbin further testified that, two weeks after his resignation, he tried to get his job back but was denied entry to the building. *Id.*

Mr. Alvarez testified that he never accused Mr. Corbin of theft or of stealing from a "military fund" or any other fund. *Id.* at 4. In fact, Mr. Alvarez stated, he was not aware of the existence of any "military fund" administered by the Finance Staff. *See id.* Mr. Alvarez also testified that he was not aware of any camera being placed in Mr. Corbin's office, that he had no involvement in Mr. Corbin's resignation, and that, before the instant appeal, he was not aware of any report by Mr. Corbin that he was being treated improperly. *Id.* Mr. Alvarez stated that it was normal protocol to deny access to anyone who resigned from DOJ and was no longer an employee. *Id.*

The AJ also received the testimony of Letitia Bing, Assistant Director for JMD's Financial Operations Services Group. *Id.* Ms. Bing was Mr. Corbin's second-level supervisor. *See id.* On January 20, 2015, after learning that Mr. Corbin intended to leave DOJ, she went to his office, spoke to him, and tried to convince him to stay. *Id.* at 5. Ms. Bing testified that she also spoke to Mr. Corbin later in the day. She stated that she told him he was a good employee and, again, tried to convince him not to resign. *Id.* Ms. Bing stated that she told Mr. Corbin he could take leave for a couple of weeks if he wanted, but that he just packed up his things and left. *Id.* Hoping that Mr. Corbin might change his mind, Ms. Bing did not immediately process his resignation. About a week later, however, a JMD employee who had been in contact with Mr. Corbin on an almost daily basis told Ms. Bing that Mr. Corbin wanted his resignation to stand; as a result, she processed it. *Id.* The last contact Ms. Bing had with Mr. Corbin was on April 1, 2015, when, at his request, she

met him for lunch. She recounted that, at the lunch, Mr. Corbin asked how things were going at the office and whether his position had been filled, but that he did not say he wanted his job back. *Id.* at 6. Ms. Bing testified that Mr. Corbin had never been absent from work on account of military duty or service and that he had never told her he was treated improperly at DOJ. Ms. Bing also testified that a camera was never placed over Mr. Corbin's desk. *Id.*

On October 27, 2015, the AJ issued an initial decision in which he found that Mr. Corbin had failed to show that his uniformed service had played any part in his separation from DOJ. The AJ stated that Mr. Corbin's claims of being accused of theft or embezzlement were "unsupported by any corroborating evidence." *Id.* at 6. The AJ also stated that Mr. Corbin had failed to show that "the performance, application to perform, or obligation to perform duty in the uniformed service was a substantial or motivating factor in his resignation or any other agency action." *Id.* (internal quotation marks and citation omitted). On this basis, the AJ determined that Mr. Corbin had failed to establish that DOJ had violated his USERRA rights. *Id.* The AJ's initial decision became the final decision of the Board on December 1, 2015, after Mr. Corbin failed to petition the Board for review. *See* 5 C.F.R. § 1201.113(a). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Kewley v. Dep't*

*of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998).

III.

An employee making a USERRA discrimination claim bears the initial burden of establishing, by a preponderance of the evidence, that his military service was a "substantial or motivating factor" in the adverse employment action taken against him. *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). In rejecting Mr. Corbin's claim of mistreatment and discrimination, the AJ relied on the testimony of Mr. Alvarez and Ms. Bing. In other words, the AJ weighed the evidence before him and made credibility determinations regarding the evidence presented and the testimony of the witnesses, crediting the testimony of Mr. Alvarez and Ms. Bing over that of Mr. Corbin. Such credibility determinations are "virtually unreviewable." *Parkinson v. Dep't of Justice*, 815 F.3d 757, 764 (Fed. Cir. 2016). Mr. Corbin, moreover, has presented us with no reason why we should disturb those determinations. The testimony of Mr. Alvarez and Ms. Bing clearly refutes Mr. Corbin's claim of discrimination and mistreatment by the agency. Thus, Mr. Corbin has failed to demonstrate error in the *Final Decision*.

IV.

For the foregoing reasons, the final decision of the Board is *affirmed*.

**AFFIRMED**

No costs.